IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| DONALD F. ST. CLAIR, | : | HON. JEROME B. SIMANDLE |
| Plaintiff, | : | Civil No. 08-1257 (JBS) |
| v. | : | |
| CITIZENS FINANCIAL GROUP, et al., | : | **OPINION** |
| Defendants. | : | |

APPEARANCES:

Mr. Donald F. St. Clair
379 Barton Run Blvd.
Marlton, NJ 08053
      Plaintiff appearing pro se

Janice Louise Shipon, Esq.
STRADLEY RONON STEVENS & YOUNG LLP
2600 One Commerce Square
Philadelphia, PA 19103-7098
      Counsel for Defendants Citizens Financial Group, RBS
      Citizens, N.A., Citizens Bank of Pennsylvania, Charter One
      Financial Services, Charter One Bank, Lawrence K. Fish,
      Stephen D. Steinour, Norman J. Deluca, Dana Drago, Robert M.
      Mahoney, Ben Barone, Laird Boulden, Robert M. Curley, Joe
      Dewhirst, Christopher Y. Downs, Edward O. Handy, Bradford B.
      Kopp, Joseph J. Marcaurele, Theresa McLaughlin, Ralph J.
      Papa, Sandra E. Pierce, Edwin Santos, Cathleen A. Schmidt,
      Scott C. Swanson, Maria Tedesco, Hal R. Tovin, and Robert E.
      Smyth.

**SIMANDLE**, District Judge:

# I.   INTRODUCTION

      Plaintiff Donald St. Clair, appearing pro se, has brought

before the Court a myriad of claims all arising out of penalty

fees he incurred for over-drawing on his Citizens Bank account.[1]
Plaintiff asserts that Defendants Citizens Financial Group, along
with its parent corporation RBS Citizens, N.A., several of its
banks, as well as numerous officers and executive committee
members (collectively, "Defendants"), illegally fixed these
overdraft charges in contravention of sections one and two of the
Sherman Act,[2] 15 U.S.C. §§ 1, 2, and New Jersey antitrust law,
and forced Plaintiff to pay these fees through mail fraud, bank
fraud, and extortion, thereby violating the Racketeer Influenced
and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961-68.

Defendants now move the Court to dismiss Plaintiff's amended

---

[1] In both his complaint and his amended complaint Plaintiff
also brought suit on behalf of other "unknown and unnamed"
plaintiffs, but the Court has already ordered these unknown
plaintiffs stricken from the complaint as legally frivolous
[Docket Item 2].

[2] Though not specifically plead, Plaintiff is necessarily
seeking relief under section four of the Clayton Act, which
provides the private right of action for all federal antitrust
violations. 15 U.S.C. § 15(a); 2660 Woodley Road Joint Venture
v. ITT Sheraton Corp., 369 F.3d 732, 738 (3d Cir. 2004). Section
four reads in relevant part:

> [A]ny person who shall be injured in his business
> or property by reason of anything forbidden in the
> antitrust laws may sue therefor in any district
> court of the United States in the district in which
> the defendant resides or is found or has an agent,
> without respect to the amount in controversy, and
> shall recover threefold the damages by him
> sustained, and the cost of suit, including a
> reasonable attorney's fee.

15 U.S.C. § 15(a).

2

complaint for failure to state any claim for which relief may be granted [Docket Items 8 and 21].[3]  The Court, having spent significant time parsing through Plaintiff's lengthy complaint and amended complaint and having considered all arguments made for and against this motion, will grant Defendants' motion to dismiss in full for the reasons set forth below.  Plaintiff's amended complaint is dismissed with prejudice and Plaintiff may not further amend.

## II.  BACKGROUND

### A.  Facts

Though Plaintiff has submitted a sixty-six page initial complaint, followed by a fifty-seven page amended complaint, there are few facts in support of his claim for relief.  At some point in time, Plaintiff and his mother, now deceased, opened a bank account with Citizens Bank in East Haven, Connecticut.  (Am. Compl. at 10.)  From the account's opening until January 2007, Social Security payments were automatically deposited into this account.  (Id.)  Over a period of almost one and a half years, from March 23, 2006 through July 30, 2007, Plaintiff incurred $772 in overdraft fees, though $144 of that was returned on

---

[3] Defendants' motion to dismiss Plaintiff's amended complaint incorporates the arguments from Defendants' motion to dismiss Plaintiff's initial complaint.  (Def. Br. Am. Compl. at 3, n.1) Thus, the Court will refer to both motions throughout this opinion.  However, because Plaintiff has submitted an amended complaint, Defendants' initial motion to dismiss is deemed moot.

Plaintiff's request.  (Id. at 39-40).  Plaintiff alleges that he has continued to incur overdraft fees, but has not provided the Court with any figures.  (Id. at 10, 40.)  According to Plaintiff these fees accumulate because Defendants intentionally delay the delivery of overdraft notices, such that Plaintiff has already accrued several days of penalties before he learns that he has insufficient funds in his account.[4]  (Id. at 20, 41.)

These fees, Plaintiff alleges, are not the product of market forces, but instead have been falsely inflated either as a result of a conspiracy between Defendants and various "unknown person conspirators of competitor banks and/or bank enterprises" or because of Defendants' monopolization of the market.  (Id. at 12, 25.)  Plaintiff's allegations of conspiracy are founded on two things: (1) many of the individual defendants who are officers or members of the executive policy committee for Citizens Financial Group were previously employed by other banks, and (2) competitor banks have similar overdraft fees.[5]  (Id. at 5-10, 27-32.)  To

_____

[4] Plaintiff bases his allegations on three overdrawn account notices that were postmarked four to six days after the date on the notice, and compares them to five account statements that were postmarked either the same day or one to two days later. (Id. at 45-46.)

[5] Of the banks Plaintiff surveyed, fees ranged between $20 to $38.  (Id. at 27-32.)  By way of example, Citizens Bank charges $35 for each item overdrawn for the first three days the account remains overdrawn, and then the fee goes up to $38 per item.  (Id. at 27.)  Bank of America charges $20 for the first day and $35 for all subsequent days.  (Id. at 28.)  Wachovia Bank charges $22 for the first overdraft and then $35 for all

show that Defendants maintain a monopoly, Plaintiff emphasizes that "Citizens Financial Group has $159 Billion in assets, making it one of the 10-largest commercial bank holding companies in the United States" and provides a history, evidently taken from Defendants' website, of Citizens Financial Group's growth and success.  (Id. at 12-16.)  Finally, Plaintiff points to the $18 increase in overdraft fees from 2006 to 2007, an unreasonable increase according to Plaintiff, as evidence of Defendants' illicit activity.  (Id. at 19.)

According to Plaintiff, Defendants present the impression of governmental imprimatur which facilitates their collection of the overdraft fees.  (Id. at 16-17, 42.)  In support of this theory, Plaintiff offers a portion of a personal deposit account agreement and highlights references to the federal government, including the bank's recognition of federal bank holidays and the fact that "[the] account is also subject to federal law . . ." (Id. at 17.)

Relying on the aforementioned facts, Plaintiff has concluded that Defendants have set "excessive and collusive fees above free market influence for insufficient funds, overdrafts, available funds and sustained fees . . ."  (Id. at 21-24.)  He seeks declaratory relief as well as "such other relief as the Court may deem just and proper."  (Id. at 55-57.)

―――――――――――――

subsequent overdrafts.  (Id. at 30.)

## B.    Procedural History

On March 12, 2008, Plaintiff filed his initial complaint in this matter [Docket Item 1].  Defendants moved to dismissed that first complaint [Docket Item 8] and Plaintiff, without seeking leave from the Court, submitted a "Case Statement" in which he reiterated his RICO claims [Docket Item 9].  On July 7, 2008, again without leave from the Court, Plaintiff submitted an amended complaint [Docket Item 11].  Defendants likewise moved to dismiss this amended complaint [Docket Item 21].  Throughout this litigation Plaintiff has appeared pro se.

## III. DISCUSSION

## A.    Standard of Review

On a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, the Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

> While Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because "it strikes a savvy judge that actual proof of those facts is improbable," the "[f]actual allegations must be enough to raise a right to relief above the speculative level."

Phillips, 515 F.3d at 234.  "To survive a motion to dismiss, a

6

civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, --- U.S. ----, 127 S. Ct. 1955, 1965 (2007)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. at 1964-65 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

> "[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. [Twombly, 127 S. Ct. at 1965 n.3.]  This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.  Id.

Phillips, 515 F.3d at 234.

For allegations of fraud, however, the stringent pleading standard of Rule 9(b), Fed. R. Civ. P., requires that all such allegations be pled with particularity.  Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007).  "Pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the

defendant on notice of the 'precise misconduct with which [it is] charged.'" Id. (quoting Lum v. Bank of America, 361 F.3d 217, 220 (3d Cir. 2004)).  Generalized allegations of a fraudulent scheme do not suffice under Rule 9(b).  Naporano Iron & Metal Co. v. American Crane Corp., 79 F. Supp. 2d 494, 511-12 (D.N.J. 1999).

In Twombly the Supreme Court clarified the standard for reviewing the sufficiency of a pleading under Rule 8, Fed. R. Civ. P., when adjudicated in a motion to dismiss for failure to state a claim upon which relief may be granted, filed under Rule 12(b)(6), Fed. R. Civ. P.  Twombly, 127 S. Ct. at 1964-69.  In requiring factual allegations that create more than a suspicion of a cognizable claim, the Court did away with the standard in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), overruled by Twombly, 127 S. Ct. at 1968-69, "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Although the Twombly/Phillips standard demands more of the pleading than the superseded rubric of Conley, the Supreme Court has also held that Twombly does not change the traditional leniency with which pro se pleadings will be reviewed for sufficiency under Rule 12(b)(6).  Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007).

Thus, Plaintiff's pro se pleading is also reviewed with liberality, as required by the well-settled doctrines of Estelle

v. Gamble, 429 U.S. 97, 106 (1976), and Haines v. Kerner, 404
U.S. 519, 520 (1972).  With this in mind, the Court examines the
amended complaint.

**B.  Antitrust Claims**

Plaintiff charges Defendants with violating both section one
and section two of the Sherman Antitrust Act.  He asserts
Defendants have colluded with other banks to illegally raise
overdraft fees beyond what would be their "free market" rate,
contrary to the prohibition in section one of the Sherman Act.[6]
Plaintiff further asserts that these inflated fees are also the
product of Defendants' illegal monopoly, thus contrary to section
two of the Sherman Act.[7]  In addition, Plaintiff seeks relief for
this alleged conduct under New Jersey's counterpart to the
Sherman Act, the New Jersey Antitrust Act, N.J. Stat. Ann. §§
56:9-3,-4.

Defendants move for dismissal of all these claims, arguing
first that Plaintiff lacks antitrust standing, and that even if
he has such standing he has failed to state a claim for which

---

[6] Sherman Act § 1 declares: "Every contract, combination in
the form of trust or otherwise, or conspiracy, in restraint of
trade or commerce among the several States, or with foreign
nations, is declared to be illegal."  15 U.S.C. § 1.

[7] Sherman Act § 2 states: "Every person who shall
monopolize, or attempt to monopolize, or combine or conspire with
any other person or persons, to monopolize any part of the trade
or commerce among the several States, or with foreign nations,
shall be deemed guilty of a felony . . . ."  15 U.S.C. § 2.

relief may be granted under Rule 12(b)(6), Fed. R. Civ. P.  The
Court agrees that Plaintiff has failed to state an antitrust
claim, but will address each argument in turn below.

    1.  Antitrust Standing

As Defendants have challenged Plaintiff's antitrust
standing,[8] the Court must address that argument first before
turning to the merits.  See 2660 Woodley Rd. Joint Venture v. ITT
Sheraton Corp., 369 F.3d 732, 736 (3d Cir. 2004).  The Supreme
Court has established, and the Third Circuit has applied, a two-
part test for determining whether the plaintiff has endured an
antitrust injury:

> To establish antitrust standing a plaintiff must
> show both: 1) harm of the type the antitrust laws
> were intended to prevent; and 2) an injury to the
> plaintiff which flows from that which makes
> defendant's act unlawful.

Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp., 995
F.2d 425, 429 (3d Cir. 1993) (citing Int'l Raw Materials, Ltd. V.
Stauffer Chem. Co., 978 F.2d 1318, 1327-28 (3d Cir. 1992)).

Once an antitrust injury has been established, plaintiff
must further establish that he or she is a proper antitrust

---

    [8] Plaintiff's standing, for the purposes of antitrust
claims, requires more than that needed for Article III standing.
As the Supreme Court has explained, "Harm to the antitrust
plaintiff is sufficient to satisfy the constitutional standing
requirement of injury in fact, but the court must make a further
determination whether the plaintiff is a proper party to bring a
private antitrust action."  Associated Gen. Contractors of Cal.,
Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 535 n.31
(1983).

plaintiff.  <u>Angelico v. Lehigh Valley Hospital, Inc.</u>, 184 F.3d

268, 274 (3d Cir. 1999).  To determine standing, the Third

Circuit considers the following factors:

> (1) the causal connection between the antitrust
> violation and the harm to the plaintiff and the
> intent by the defendant to cause that harm, with
> neither factor alone conferring standing; (2)
> whether the plaintiff's alleged injury is of the
> type for which the antitrust laws were intended to
> provide redress; (3) the directness of the injury,
> which addresses the concerns that liberal
> application of standing principles might produce
> speculative claims; (4) the existence of more
> direct victims of the alleged antitrust violations;
> and (5) the potential for duplicative recovery or
> complex apportionment of damages.

<u>Id.</u> (citing <u>Associated Gen. Contractors of Cal. V. California</u>

<u>State Council of Carpenters</u>, 459 U.S. 519, 545 (1983)).

In this case, the Court finds that Plaintiff has the

necessary antitrust standing.  Assuming Plaintiff's allegations

to be true, he was directly injured by illegally elevated

overdraft fees and this loss stemmed from "a competition-reducing

. . . effect of the [Defendants'] behavior."  <u>See</u> <u>Atlantic</u>

<u>Richfield Co. V. USA Petroleum Co.</u>, 495 U.S. 328, 344 (1990).  He

was the direct target of this alleged conspiracy - a consumer

forced to pay an allegedly illegally fixed penalty fee - and has

not passed on his injury to others, creating no risk of

duplicative recovery.  <u>See</u> <u>Angelico</u>, 184 F.3d at 275; <u>see also</u>

<u>Reiter v. Sonotone Corp.</u>, 442 U.S. 330, 339 (1979) ("A consumer

whose money has been diminished by reason of an antitrust

11

violation has been injured 'in his . . . property' within the
meaning of § 4[ of the Clayton Act].").  He has, as a
consequence, established standing to bring his antitrust claims
before this Court.  See Angelico, 184 F.3d at 275.

    Defendants mistakenly argue that Plaintiff must establish
injury to competition in order to bring an antitrust claim.
(Def. Br. Initial Compl. at 9.)  In Angelico, the Third Circuit
rejected just this argument, reversing and remanding a claim
where the district court held that a personal injury to plaintiff
was not enough to confer standing without showing an larger
impact on the market.[9]  184 F.3d at 273.  The court of appeals
made clear that such a showing is not required for antitrust
standing, but instead is relevant to show restraint of trade when
proving the merits of an antitrust claim.  Id. at 273, 275-76
("[W]e must distinguish the antitrust injury that is required for
a plaintiff to have standing to bring an antitrust claim from the
anticompetitive market effect element of a claim under section 1
[of the Sherman Act], which is also generally referred to as
'antitrust injury.'").  Plaintiff has standing to bring these
antitrust claims, but because the Court finds, as set forth
below, that Plaintiff has not sufficiently plead his allegations

_____

    [9] The district court held that "an injury to Dr. Angelico
personally does not confer standing upon him without a showing
that his absence from the relevant product and geographic markets
injured competition and/or the consumers of cardiothoracic
surgical services in these markets."  Angelico, 184 F.3d at 273.

of conspiracy (Part III.B.2, _infra_), the Court will not address the anticompetitive market effect of this alleged conspiracy.

 2.   Allegations of Conspiracy

 Fundamental to a claim under Sherman Act § 1 and its state analog, the New Jersey Antitrust Act § 56:9-3, is a "contract, combination, . . . or conspiracy in restraint of trade or commerce."[10]   15 U.S.C. § 1; N.J. Stat. Ann. 56:9-3; Twombly, 127 S. Ct. at 1961; Patel v. Soriano, 848 A.2d 803, 826-27 (N.J. Super. Ct. App. Div., 2004), _cert._ _denied_ 861 A.2d 845 (N.J. 2004).   A general allegation of conspiracy will not withstand a Rule 12(b)(6) motion.   Twombly, 127 S. Ct. at 1966; Brunson Communications, Inc. v. Arbitron, Inc, 239 F. Supp. 2d 550, 559 (E.D. Pa. 2002).

> To adequately allege the element of concerted activity, a plaintiff must do more than insert the word "conspiracy" into his pleading. As the Third Circuit has stated, the "allegation of unspecified contracts with unnamed other entities to achieve unidentified anticompetitive effects does not meet the minimum standards for pleading a conspiracy in violation of the Sherman Act."

---

 [10] The language of the New Jersey Antitrust Act is virtually identical to the antitrust provisions in the Sherman Act.   15 U.S.C. §§ 1, 2; N.J. Stat. Ann. §§ 56:9-3, -4.   Furthermore, the New Jersey act specifically provides that it "be construed in harmony with ruling judicial interpretations of comparable Federal antitrust statutes and to effectuate, insofar as practicable, a uniformity in the laws of those states which enact it."   N.J. Stat. Ann. § 56:9-18.   As a result, courts look to federal jurisprudence on the Sherman Act when analyzing the New Jersey Antitrust Act.   Desai v. St. Barnabas Med. Ctr., 510 A.2d 662, 671 (N.J. 1986); Patel, 848 A.2d at 826.

Brunson, 239 F. Supp. 2d at 560 (quoting Garshman v. Universal Resources Holding, Inc., 824 F.2d 223, 230 (3d Cir. 1987)). Instead, a plaintiff must plead "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." Twombly, 127 S. Ct. at 1965.

The Court finds that, consistent with the Supreme Court's holding in Twombly, Plaintiff has not submitted factual allegations that raise his claim of conspiracy beyond the speculative level. 127 S. Ct. at 1965. In Twombly, the plaintiffs alleged that defendants engaged in a parallel course of conduct, but failed to provide a factual context suggesting an agreement, rather than identical, independent action. Id. at 1962-63. The Court noted that even "conscious parallelism" is not in itself unlawful, stating that "mere interdependence of basic price decisions is not conspiracy." Id. at 1964 (internal citations omitted). For these reasons, the Supreme Court held that "an allegation of parallel conduct and a bare assertion of conspiracy will not suffice" to withstand a motion to dismiss allegations under Sherman Act § 1. Id. at 1966.

Plaintiff similarly offers merely an allegation of parallel conduct - the similar overdraft fees amongst several banks - and a bare assertion of conspiracy, so dismissal is required under Twombly. See id. Plaintiff provides no factual context that suggests anything more than a parallel determination by these

14

banks as to what is a sufficient fee to deter customers from spending money they do not have.  That this amount would be similar across banks is not surprising and does not suggest an invidious agreement amongst banking institutions to illegally inflate overdraft fees.[11]  See id. at 164 ("The inadequacy of showing parallel conduct or interdependence, without more, mirrors the ambiguity of the behavior: consistent with conspiracy but just as much in line with a wide swath of rational competitive business strategy unilaterally prompted by common perceptions of the market.")  Plaintiff's suggestion that Defendants' individual officers' experience working for other banks is evidence of conspiracy is speculation at its most extreme.  The Court finds that, even provided a liberal construction of Plaintiff's pro se complaint, Plaintiff has not plead facts "sufficient enough to render a . . . conspiracy plausible" and so will dismiss Plaintiff's claims under the Sherman Act § 1 and the New Jersey Antitrust Act § 56:9-3.[12]

---

[11] The Court notes that overdraft fees, in and of themselves, are not illegal.  See Withers v. Jefferson Trust Co., 196 A. 442, 443 (N.J. Ch. 1938) ("[T]he payment of an overdraft by a bank amounts to a loan to its depositor, which is recoverable in the absence of an equitable defense."); see also Center Cadillac, Inc. v. Bank Leumi Trust Co., 859 F. Supp. 97, 105 (S.D.N.Y. 1994) ("Established precedent suggests that defendants had a legal right to treat plaintiffs' overdraft as a loan and impose terms and conditions upon its repayment, including charging them a reasonable interest rate.").

[12] The Court has found insufficient allegations of conspiracy and so it need not address further claims under

3.  Allegations of Monopoly

To state a claim of monopolization under the Sherman Act § 2 and its New Jersey counterpart in the New Jersey Antitrust Act § 56:0-4, a plaintiff must allege:

> (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.

U.S. v. Grinnell Corp., 384 U.S. 563, 570-71 (1966); Patel, 848 A.2d at 829-30.  "As to the first element, the Supreme Court has defined monopoly power as the power 'to control prices or exclude competition.'" Brunson, 239 F. Supp. 2d at 568 (quoting U.S. v. E.I. du Pont de Nemours & Co., 351 U.S. 377, 392 (1956)); Patel, 848 A.2d at 830.  The likelihood of achieving a monopoly is demonstrated through a market share sufficient to create a monopoly, and in general "[c]ourts are reluctant to find monopoly

---

Sherman Act § 1.  The Court will, however, very briefly note that Plaintiff's perfunctory suggestion that Defendants are guilty of "tying" does not state a claim for which relief could be granted, had the Court concluded there were sufficient allegations of concerted action.  See Brokerage Concepts, Inc. v. U.S. Healthcare, Inc., 140 F.3d 494, 510 (3d Cir. 1998).  Plaintiff bases his tying claim on the offer by some unknown bank official that Plaintiff create an overdraft line of credit to avoid future overdraft fees.  (Am. Compl. at 41.)  Because, inter alia, Plaintiff has not alleged that he was forced to set up this credit line in order to open a bank account, he fails to state a claim of tying.  See Brokerage Concepts, 140 F.3d at 510 ("Tying exists where a seller conditions the sale of one good (the tying product) on the buyer also purchasing another, separate good (the tied product).")

power where the defendant business controls less than fifty
percent of the given market." Brunson, 239 F. Supp. 2d at 568.
Once plaintiff has established a sufficient market share,
"something more" is required. Crossroads Cogeneration Corp. v.
Orange & Rockland Utils., Inc., 159 F.3d 129, 141-42 (3d Cir.
1998) (dismissing a monopolization claim where plaintiff alleged
100 percent market share). These other factors "may include 'the
strength of competition, probable development of the industry,
the barriers to entry, the nature of the anticompetitive conduct,
and the elasticity of consumer demand.'" Crossroads, 159 F.3d at
141 (quoting Barr Lab., Inc. v. Abbott Lab., 978 F.2d 98, 112 (3d
Cir. 1992)).

     In the present case, Plaintiff has not alleged any
particular percentage of any relevant market controlled by
Defendants. Instead, Plaintiff points to the relative success of
Citizens Financial Group, which apparently enjoys $159 billion in
assets and is one of the "10 largest commercial bank holding
companies in the United States." (Am. Compl. at 12-16.) Nor has
he set forth any facts showing the strength of competition,
probable development of the industry, the barriers to entry,[13]

_____

     [13] Plaintif's conclusory statement that Defendants have
"effectively barricaded entry into the market" is not supported
anywhere in his amended complaint and does not constitute a
"fact" in support of his allegations of monopolization. (Am.
Compl. at 12.) Twombly, 127 S. Ct. at 1964-65 ("While a
complaint attacked by a Rule 12(b)(6) motion to dismiss does not
need detailed factual allegations, a plaintiff's obligation to

the nature of the anti-competitive conduct, or the elasticity of consumer demand.  That Citizens Financial Group has been able to grow and acquire smaller banks in the process in not evidence of a monopoly, for there is nothing in Plaintiff's amended complaint to suggest that Defendants procured this success through competitively unreasonable practices.  See Crossroads, 159 F.3d at 141; Grinnell Corp., 384 U.S. at 570-71 (distinguishing "the willful acquisition or maintenance" of monopoly power "from growth or development as a consequence of a superior product, business acumen, or historic accident.").  The Court is forced to conclude that Plaintiff, even when his amended complaint is liberally construed, has not plead facts from which the Court finds it plausible that Defendants have the power to control prices or exclude competition and so must dismiss Plaintiff's claims under the Sherman Act § 2 and the New Jersey Antitrust Act § 56:9-4.  See Brunson, 239 F. Supp. 2d at 570 (dismissing plaintiff's monopolization claims where he had "not only failed to allege any facts regarding [defendant's] market share, but also, none of the other factors associated with monopoly power.").[14]

---

provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (quoting Papasan, 478 U.S. at 286).

[14] Any claim of attempted monopolization must similarly fail because, as discussed above, Plaintiff has not sufficiently plead

C.    **RICO Claims**

In addition to his allegations of antitrust activity, Plaintiff asserts that Defendants are guilty of racketeering under the RICO Act.  Plaintiff asserts that Defendants' have violated antitrust law and committed mail fraud, bank fraud, and extortion under the Hobbs Act, 18 U.S.C. § 1951, which constitute a pattern of racketeering activity sufficient to state a claim for relief under RICO.  Defendants respond that Plaintiff's RICO claims must be dismissed because Plaintiff has not alleged the necessary predicate acts or a cognizable RICO "enterprise."  The Court concludes that Plaintiff has not plead the predicate acts required for a RICO claim and so will grant Defendants' motion to dismiss without determining whether an "enterprise" has been alleged.

A civil RICO claim requires a plaintiff to establish four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L v. Imrex Co., 473 U.S. 479, 496 (1985).  "Racketeering activity" is defined in 18 U.S.C. § 1961(1) – a list of acts, called "predicate acts," which are considered racketeering activity under RICO.  The failure to allege predicates acts is fatal to a civil claim under RICO.  See Warden v. McLelland, 288 F.3d 105, 114 (3d. Cir 2002).  The Court

---

"that [Defendants have] engaged in predatory or anticompetitive conduct."  See Spectrum Sports, Inc. v. McQuillan, 506 U.S. 447, 456 (1993).

will consider each alleged predicate act raised by Plaintiff.

1.   Antitrust Violation

Antitrust violations are not RICO predicate offenses.
Schwartz v. Hospital of the Univ. of Pa., Civ. A. No. 88-4865,
1993 WL 153810, at *7 (E.D. Pa. 1993) ("Courts have consistently
held that an antitrust violation is not a RICO predicate act.");
Paul Batista, Civil RICO Practice Manual § 3.10 (3d ed. 2008);
see Annulli v. Panikkar, 200 F.3d 189, 200 (3d Cir. 1999),
overruled on other grounds by Rotella v. Wood, 528 U.S. 549
(2000).  The Third Circuit has held that the list of predicate
acts in 18 U.S.C. § 1961(1) is exhaustive, for a finding to the
contrary "would be to usurp the role of Congress in drafting
statutes." Annulli, 200 F.3d at 200.  Antitrust claims are not
included in this list.  18 U.S.C. § 1961(1).  As a consequence,
Plaintiff's allegations of monopoly and conspiracy, even if the
Court had found them sufficient, would not provide a basis for
his racketeering charge.

2.   Bank Fraud

"[T]he sine qua non of a bank fraud violation . . . is the
intent to defraud the bank." U.S. v. Khorozian, 333 F.3d 498,
503 (3d Cir. 2003) (internal citations omitted) (emphasis added).
As a consequence, the Third Circuit has held that "where there is
no evidence that the perpetrator had an intent to victimize the
bank, . . . merely an intent to victimize some third party does

20

not render the conduct actionable under § 1344."[15]  <u>U.S. v.</u>
<u>Leahy</u>, 445 F.3d 634, 647 (3d Cir. 2006).  This intent requirement
applies equally to 18 U.S.C. §§ 1344(1) and (2).  <u>U.S. v. Thomas</u>,
315 F.3d 190, 199 (3d Cir. 2002).  Plaintiff concedes that the
conduct he alleges was not intended to harm the bank, but in fact
was intended to benefit the bank.  (Am. Compl. at 48) ("The bank
fraud statute is arguably violated whenever a scheme to defraud
results in the victim authorizing a bank to release funds to the
perpetrator.  By definition, this act has been perpetrated upon
plaintiff.  The only twist is that the bank has received the
property.")  This concession is fatal to Plaintiff's allegation
of bank fraud, for he does not charge that defendants had intent
to defraud any bank, and so Plaintiff has not established bank
fraud as a RICO predicate act.

---

[15] The federal bank fraud statute forbids the following
conduct:

> Whoever knowingly executes, or attempts to execute,
> a scheme or artifice--
>
> (1) to defraud a financial institution; or
>
> (2) to obtain any of the moneys, funds, credits,
> assets, securities, or other property owned by, or
> under the custody or control of, a financial
> institution, by means of false or fraudulent
> pretenses, representations, or promises;
>
> shall be fined not more than $1,000,000 or
> imprisoned not more than 30 years, or both.

18 U.S.C. § 1344.

3.   Mail Fraud

Plaintiff seeks to establish mail fraud with his evidence that he received several overdraft notices later than other mail from his bank, causing him to accumulate greater penalties.  (Am. Compl. at 45-46.)  These pleadings fall far short of the heightened standard required for allegations of fraud.  See Frederico, 507 F.3d at 200.  What Plaintiff fails to allege, and what would be necessary to a claim of mail fraud, is any misrepresentation by Defendants.  See U.S. v. Boffa, 688 F.2d 919, 925 (3d Cir. 1982) ("Generally, [the mail fraud statute] has been expansively construed to prohibit all schemes to defraud by any means of misrepresentation that in some way involve the use of the postal system.").  Nowhere in Plaintiff's lengthy complaint or amended complaint has he suggested that Defendants made any misrepresentations to him about the amount of his overdraft fees.  To the contrary, he has included in his amended complaint information provided to him by Defendants describing Defendants' overdraft fees.  (Am. Compl. at 18, 27, 42.)  Nor has he suggested that these delayed overdraft notices contained any misrepresentations.  A general pronouncement of a scheme of fraud will not do.  See Naporano Iron, 79 F. Supp. 2d at 511-12.  Without any specific allegations of fraud facilitated by the postal service, Plaintiff has cannot establish the RICO precatory act of mail fraud.  See Boffa, 688 F.3d at 925.

22

4.   <u>Hobbs Act</u>

Finally, Plaintiff alleges the Defendants used extortion to elicit the overdraft charges held against him in violation of the Hobbs Act, 18 U.S.C. § 1951.  "Extortion" is defined in the Hobbs Act as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."  18 U.S.C. § 1951(b)(2).  Plaintiff claims that Defendants obtained property from him "under color of official right."  What is lacking, however, is any indication that Defendants made wrongful use of any possible perception of government authority, as required under the statute.  18 U.S.C. § 1951(b)(2); <u>see</u> <u>U.S. v. Mazzei</u>, 521 F.2d 639, 643 (3d Cir. 1975).  Instead, Plaintiff submits a personal deposit account agreement and highlights references to the federal government, including recognition of federal bank holidays and the fact that "[this] account is also subject to federal law . . ." (<u>Id.</u> at 17.)  That Defendants correctly disclose the laws governing customers' accounts, as well as the holidays they recognize, does not establish that they have abused any supposed connection to the federal government in order to extract money from Plaintiff.  Though Plaintiff may read the fine print on all bank publications and internet postings, he has not plead facts which show that these publications are used for extortion.  <u>See</u> <u>Mazzei</u>, 521 F.2d at 643.  As a result, his Hobbs

23

Act allegations cannot withstand this motion to dismiss.

Left, therefore, without any necessary predicate acts, Plaintiff has failed to state a claim under the RICO Act for which relief may be granted and the Court will dismiss those claims.  See Warden, 288 F.3d at 114 (noting that a plaintiff must establish a pattern of predicate acts to succeed in a RICO action).

> **D.   Leave to Amend**

The Court will not grant Plaintiff leave to filed a second amended complaint.  Plaintiff St. Clair, although proceeding pro se, has exhibited an uncommon degree of legal sophistication. Though Plaintiff has not explicitly sought leave to amend, for the sake of completeness and because Plaintiff, appearing pro se, is granted a liberal interpretation of all his filings, the Court will explain its reasons.  Under Federal Rule of Civil Procedure 15(a)(2), "the court should freely give leave [to amend the complaint] when justice so requires."  Although "the grant or denial of an opportunity to amend is within the discretion of the District Court, . . . outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of that discretion."  Foman v. Davis, 371 U.S. 178, 182 (1962). Among the legitimate bases for denying a plaintiff the opportunity to amend the complaint are "substantial or undue prejudice, . . . truly undue or unexplained delay, repeated

24

failures to cure the deficiency by amendments previously allowed, or futility of amendment." Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993) (citation omitted).

The Court is convinced that any further amendment to Plaintiff's complaints would be futile. Plaintiff has submitted a total of 123 pages of pleadings, laid out in his initial and amended complaints. In addition, Plaintiff has submitted a case statement, and oppositions to Defendants' motions to dismiss his initial complaint and amended complaint. In each filing he has outlined the same claims with virtually identical factual allegations, and each filing has included the same deficiencies that have led this Court to dismiss his amended complaint in its entirety. The Court must conclude that Plaintiff would be unable to cure these deficiencies with any subsequent filings and so will grant Defendants' motion to dismiss with prejudice, without granting Plaintiff leave to amend.

## IV.  CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion to dismiss Plaintiff's amended complaint in its entirety. The Court will dismiss Defendants' claims under the Sherman Act, the New Jersey Antitrust Act, and the RICO Act, as well as any possible independent claims for mail fraud, bank fraud, or a Hobbs Act violation, for the Court concludes that Plaintiff has failed to state a claim for which relief may be granted under any

of these provisions.  Finally, the Court will dismiss these claims with prejudice and will not grant Plaintiff leave to further amend his pleadings.  The accompanying Order will be entered.

**November 12, 2008**
Date

    **s/ Jerome B. Simandle**
JEROME B. SIMANDLE
United States District Judge

26